Our next case for argument this morning is United States v. Donoho. Ms. Ettinger Good morning and may it please the court, Jessica Ettinger for Shannon Donoho. We're here today following a jury trial in the Western District of Wisconsin at which Mr. Donoho was convicted of production and attempted production of child pornography. The statute that's relevant here, 2251, is one that this court has interpreted to make two demands relevant on this appeal. First, the minor has to be the one engaged in the sexually explicit conduct. Second, the defendant must take some action to cause the minor's direct engagement in that sexually explicit conduct. It's not enough to treat the minor as a sexual object. It's not enough for the defendant to just look at the minor with lust. Well, that's easy for you to say, but it's awfully hard to reconcile that with Miller. Is it not? What do you want us to do with Miller? Your Honor, I think Miller is a sufficiency of the evidence case specific to the images that Brian Miller created. It's not one in which the court was asked. It's a ticket good for this day and train only? It's the apex of confusion in the case law surrounding the Dost factors. Again, in footnote 1 of Miller, the court was asked. I have no idea what you mean by the Dost factors. We haven't adopted it. It's the decision of a district court in California, and it plus $3 will get you a cup of coffee at Starbucks. I'm asking you to discuss Miller. Yes, sir. And it doesn't have any authority, doesn't really cut it. The D.C. Circuit has addressed Miller and said the problem with Miller is it's flat wrong. I can understand that, but you haven't asked us to overrule it, have you? I don't think you need to overrule Miller, Your Honor. I think Miller is cabined to its facts, and it is wrong, but the court wasn't asked in Miller to decide the statutory interpretation question that the court is being asked to decide here. The court need only go back to the text to see where Miller deviated from the text. The fact that the images are similar in Miller to the ones that are at issue here is in no way controlling of how this case should come out. And to go back to the Dost factors, you're right, Your Honor. They are. Forget the Dost factors. Let's just talk about, you know, actually if you look at the, I hate dictionaries, but if you look at the dictionary definition of lascivious, you see, and that's a statutory term, you see what somebody is getting at. I'm coming at this from the facts of this case where this man is, like, escorting the minors into the bathroom. He's telling one of the minor B that the camera is not on when it really is on. He's doing a lot of things to either produce or cause to be produced or using the minors as objects for sexually oriented films, and so I don't even know that this is such a hard case under the statute. You can imagine fringe cases always, but why is this one so hard? Your Honor, the defendant is doing a lot. He's not taking action, taking some action to cause the minors direct engagement in sexually explicit conduct. But where's the direct? He is steering them into the bathroom. He's got the, I mean, it's like this whole genre of bathroom child pornography cases, which is discouraging, but and what do you do about his assurance to minor B that the camera's not on? He's orchestrating this. Deceitful, upsetting behavior, absolutely. I'm not defending the conduct. What I'm saying is it doesn't mean that. And he's using the minor's sexually explicit conduct. He's focusing the camera only on certain parts of the body. That is not sexually explicit conduct, Your Honor. We have to come back to the definition that the Supreme Court gave us in Williams. Sexually explicit conduct, Justice Scalia says for the court, is actual depiction of a sex act. It's the hardcore pornographic conduct that the Supreme Court has been articulating since 1973 in the cases beginning with Miller v. California that Congress is then legislating against. They're coming up with authoritative constructions, the Supreme Court is, of what does a lascivious exhibition of the genitals mean. That's what shows up in 2256 and by cross-reference into 2251. Focusing in on the genitals comes back to these extra-textual considerations that don't define whether the minor's conduct is sexually explicit. And to go back to Judge Easterbrook's question, what do we do with Miller? Miller mistakes that. Miller says, let's look at the image overall, and that's what the parties are litigating in Miller. They're not asking this court, go back to the text to figure out what does the text demand. That's what Mr. Donahoe is asking this court to do. So Mr. Donahoe's behavior is uncomfortable. It's creepy. We're not defending that. We're saying it doesn't come within 2251. At a very bare minimum, the jury instructions in this case are wrong, and they demand a new trial. They talk about it's an identical jury instruction on use as a minor as this court held was erroneous in Howard. You compare them up. We have that comparison chart in our brief. If you think that we are obliged to take Miller as stating a general principle, are you contending that the jury instructions were wrong given Miller? We are contending that the jury instructions were wrong even with Miller. Miller wasn't a jury instruction case. I understand that there's language about how do we review Brian Miller's images, but those are contrary to the statute's text. We have to go back to what is the minor engagement. You're saying we have to overrule Miller, I think, when you say contrary to the statute's text. I think that's what you're saying. I don't see any way to rule in your favor without overruling Miller. Now, the D.C. Circuit is in conflict with Miller, and I thought Judge Katsas wrote a particularly good opinion concurring in the denial of rehearing en banc, but you haven't said follow Judge Katsas and abandon Miller. That's what troubles me about the briefing in this case. I agree. Judge Katsas' opinion is very, very helpful and very persuasive, and he does say that it is in conflict with Miller. But he says Miller is wrong, not that it can be made to go away. Well, let me clarify, because we do have the sexually explicit conduct issue and what is the definition of lascivious exhibition, but we also have a problem with the jury instruction on use. So this court could rule for us in our favor, even if you reject my argument on lascivious exhibition, purely on the Howard-based text issue of use. Did Mr. Donahoe use the minor? Was the jury instruction correct? Is there sufficient evidence of use on counts 1 and 3 through 7? We contend that there wasn't. Now, this court does have a procedure if it chooses to overrule Miller. I think you can thread the needle based on the posture in which this court received that case. This court doesn't have to go out of its way to make arguments that the parties didn't present to it. We, of course, have presented the court with the tools about the statutory interpretation analysis that we think is required here. The idea that a minor could be a sexual object, to go back to Judge Wood's point earlier, that Mr. Donahoe is using them as an object of interest, this court has already entertained that theory. It entertained it in Howard. Chief Judge Sykes, writing for the court in that case, described it as a strained and implausible theory and rejected it out of hand. The government's now resurrecting it, bringing it up again on similar facts, but these cases, these photographs and videos, even more clearly, don't involve the minor engaged in any sexual conduct or Mr. Donahoe causing the minor to engage in any sexual conduct. I see I'm running short on time, so unless the court has more questions for me at this moment, I'll pause and come back after my friend speaks. Certainly, counsel. Taylor Krauss for the United States. Ms. Krauss. Thank you, Taylor Krauss for the United States. I want to start where Attorney Edinger left off of Howard. I actually want to start with a question of fact. Has the Solicitor General decided whether to seek certiorari in Hilly? It's my understanding, Your Honor, that it's unlikely, but more than that, I don't know. So to address Howard, I think— So the SG is just going to let the conflict stand? It's my understanding that it's unlikely that Hilly will be— Okay. Yes, that Hilly will go further. All right. Thank you. Now, I want to start with Howard because I think it's really important to look at Howard and realize that that case and the holding there is much more narrow than what defendant is urging this court to conclude here. At most, that case held that all of the six verbs— employs, uses, persuades, induces, entices, or coerces— are all means by which someone can accomplish the end of having a child engage in sexually explicit conduct. That is, they broadly describe the means by which someone might produce child pornography. In that case, in Howard, Howard, the adult male, was the only person engaged in any explicit conduct. The child was not at all, and that's just not this case. The depictions here only show the minor. The defendant does not appear in any sexually explicit conduct, and he's satisfying use when he is manipulating the camera, he is orchestrating the chain of events, and he is then photographing— or, excuse me, recording. So, let me ask you this. I take it it's the government's position that the only intent that matters is that of the defendant, that the child doesn't need to be aware that this is sexually explicit behavior. That is the government's reading here, and that it's not that the child needs to have engaged with the intent to incite lustfulness or lustful— It's not a coquettish 12-year-old. It could be an innocent 5-year-old. Right, and that's part of the issue with defendant's proposal here, is that it would preclude many cases where we've got unconscious children, children who don't have the cognitive ability to present any kind of emotion or words, drugged children, sleeping children, and their proposition here is changing the focus from the intent of the person producing the child pornography, undertaking these actions, and shifting it inappropriately to children, and making the fact finder then decide whether the child has the intent or the ability to incite lustfulness. And Attorney Edinger also focused on going back to what the text of the statute is, and it's clear that lascivious exhibition is already included as sexually explicit conduct without more, and to abandon that or to agree with their proposition that lascivious exhibition must connote another sexual act, specifically the other acts defined as sexually explicit conduct, this court would need to abandon its precedent in favor of Hilly, which is an outlier. And again, when we're reading the cases that appellant cites these First Amendment cases to support their argument, that's just not true. At most, those cases group lascivious exhibition as a form of sexually explicit conduct. And interestingly, in Miller v. California, the Supreme Court there considered excretory functions as examples of behavior or depictions that can be permissibly regulated, and those aren't connected to any sexual act at all. And again, I think although the word hardcore was injected, I think a lot in defendants' briefing here and in some of those opinions, again, lascivious exhibition was considered part of that kind of hardcore behavior. And to introduce the term hardcore or introduce the phrase connote, I think is further muddling this court's criteria when we look at lascivious exhibition. And this court has said that lascivious exhibition requires more than mere nudity, but there needs to be a focus on the genitals, or, not and, not plus, or the image must be otherwise sexually suggestive. And this court in Russell provided further guidance that... So you're relying on the fact that the focus of the camera shots here, then, that it's, that's what... Yes. Because the girls don't seem to have, I mean, they're just showering. They're not doing anything. And I think that's an interesting point, too, in that the framing of these images, from context we know they're in the bathroom. There's the video where she's showering. From context we know they're engaging those activities. But that's not what actually the resulting footage shows. It is so square and so close up that all you see are the genitals, the anus, or the pubic area, without most of the minor's body left. And when we look at counts eight and nine, which the government submits, appellant has waived, and defendant's not entitled to review here, we actually have an adult male with the minor seated on his lap, holding her legs open so that the camera is solely focused on her exposed vagina. The rest of the minor's not even in the frame. And so when we look at defendant's theories here, both under Howard and their interpretation of lascivious exhibition, those images fall square within that. They fall within that theory and they certainly fall within this court's precedent of lascivious, regarding lascivious exhibition. And so the government's position here is that even if this court were to agree with maybe other points raised by appellant, he's not entitled to a new trial in counts eight and nine. Any instruction here would be harmless because this court needs to look at the evidence introduced in the record and consider it under the proper jury instruction. So retrial just wouldn't be the result. Now, turning again to this idea that appellant would need this court to overturn Miller, I think that's true. And I think it goes farther than just overturning Miller. I think their proposition that lascivious exhibition be tied to an additional sex act and require the minor to exhibit some sort of lustfulness or sexual inclination also overrules these other cases. But it does. I mean, the word lascivious, I mean, I guess a lot of things are in the eye of the beholder, but there is some effort to, particularly under the rule of lenity and all sorts of other things, to make sure that the scope of conduct that the statute covers is properly limited. And if you were to say that maybe Miller went too far and it was just maybe somebody finds it sexually arousing to look at somebody reading a book, there needs to be some sort of reasonableness limitation, some sort of objective content to it. And one thing you can say is if people are just going around doing ordinary life activities, like showering or using the toilet or something, that stretches it too far. And I think that's true. But the other decisions from this court have elucidated other factors here that the jury and or the fact finder should consider that really do set those limits. And as Russell said, the fact finder needs to resolve this based on the facts, based on the context, and applying common sense. Yeah, that's what worries me about the government's position. As I was reading the briefs, I thought about the movie Blue Lagoon, where an underage actress appears naked on screen actually taking a shower, standing under a waterfall. And there's been a lot of ethical arguments, pro and con, about whether a movie should show scenes like that for underage actresses. But I haven't heard until I read your brief an argument that if that turns out to be sexually arousing for any member of the audience, a federal crime has been committed. It sounds like a problem of ethics rather than of crime. Do you really want to take the position that there are a bunch of Hollywood producers who need to be criminally prosecuted because some people in the audience have very strange sexual reactions? That's not the government's position. And I think when we look at Blue Lagoon as a good reference or example here, there's artistic value in that. What is the purpose for which this child is being video recorded? And it's for a movie. And there's other context as well. But that's a dangerous path to go down. I'm reminded of the Supreme Court's lengthy line of cases trying to distinguish artistic value from other uses. That's true. But I think, again, when we're going back to what this court has set forth as guidelines here, is that we also have to consider the photographer's intent, the context of this. And in this particular case, there is no other context. It is just a photo. Vesivia's exhibition sounds like it's an effort to be objective. And what you want to do, what I think Miller did, is say, No, no, it's all in the eyes of the beholder. And so no one can actually know whether he's violated the criminal law until after the trial is over and the jury has spoken. There are pretty important principles that it's supposed to be possible to know beforehand whether you're violating the law. And in the government's view in this case, you don't. You can't. It is simply not possible to know beforehand whether you're violating the law. That's a big worry to me. May I respond to that? Please. As long as we're asking questions, you can keep giving answers. I think the big difference here, though, is that we're not asking that only subjective intent be considered here. That's not what the government's advocating for. I think these images on their face are lascivious because, again, the framing in some of these is almost akin to a So you're saying you're now arguing, I'm not sure that this is what you said in your brief, but you're now arguing that there is an objective, you know, would a reasonable person think that this was, you know, fit the definition of lascivious designed to arouse sexual interest or the like. That would be a very different test than is somebody in the audience peculiarly aroused by something. Sure. I think Russell directs the inquiry back to the fact finder. I think subjective intent is part of it. But, again, I think Russell provides the guidance that it's probably left. But throwing it all in the black box and saying that it's for the fact finder gives one very poor advance notice. Yes. But, again, I think when we're looking at the overall context of these particular images, they meet this court's precedent. And in order to find otherwise, I think this court needs to abandon that. That's my time. Thank you very much. Thank you, Ms. Krause. Anything further, Ms. Ettinger? Yes, Your Honor. The court is right to focus on the government's interest that this is all in the eye of the beholder. The government was very clear in telling the jury in this case at trial that the minor's conduct was not inherently sexual. There's multiple times where the prosecutor tells the jury ordinary, you know, urinating, showering, bathroom activities. It's not sexual. It's the fact that Mr. Donahoe filmed it, that he looked at the minors with lust, to pull on Judge Katz's language. That's what turned this non-sexual conduct into suddenly sexually explicit conduct. Why isn't the fact that the frame of the picture is so exclusively on sexualized body parts something, though, that takes this beyond what you just described? Zooming in doesn't change the conduct, Your Honor. I don't know. I mean, it changes the image that you've created. It changes the camera person's viewpoint, but it certainly doesn't change the conduct that the minor is engaged in. We gave the example of the yoga studio and somebody in tight-fitting clothing. Zooming in on downward-facing dog doesn't transform downward-facing dog into sexually explicit conduct. This all goes back to Williams. Justice Scalia, writing in Williams, is very clear. It's about what the image portrays, what is the actual conduct. And that actual conduct is not seen just through the eyes of a pedophile or somebody's personal predilections. The idea that we have waived on Counts 8 and 9 is just mistaken. These are jury questions. They do need to go back to the jury so that the jury can deal with the hard issues in the line drawing of whether the minor is engaged in sexually explicit conduct in those images, along with other counts as well, and then resentencing on Count 2. If the court has no further questions, then I'm done here. Thank you. Thank you very much, counsel. The case is taken under advisement.